UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MARK ANTHONY PLAISANCE          CIVIL ACTION NO. 6:13-cv-02365

VERSUS                          JUDGE DOHERTY

CAROLYN W. COLVIN,              MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further consideration consistent with this report and recommendation.

### BACKGROUND

The claimant, Mark Anthony Plaisance, was born on October 31, 1967.[1]  He

completed the twelfth grade,[2] and has experience working as an operator and

sandblaster in the oilfield, as a truck driver, as a dishwasher in a diner, and most

recently as a temporary laborer.[3]

---

[1]      Rec. Doc. 5-1 at 50, 70, 77.

[2]      Rec. Doc. 5-1 at 185.

[3]      Rec. Doc. 5-1 at 191; Rec. Doc. 5-3 at 51.

On November 2, 2010, at the age of forty-three, he applied for disability insurance benefits and also for supplemental security income, alleging a disability onset date of October 16, 2006.[4]   Contemporaneous reports indicate that the conditions allegedly limiting his ability to work are bipolar disorder, high blood pressure, and a hernia.[5] Because Mr. Plaisance engaged in substantial gainful activity for some time after his alleged onset date, the evaluation of his disability status runs not from his alleged onset date in 2006 but from April 21, 2009, the date on which he ceased engaging in substantial gainful activity.[6]

In April 2011, it was determined that Mr. Plaisance is not disabled.[7]  He then requested a hearing,[8] which was held on February 28, 2012 before Administrative Law Judge ("ALJ") Michael M. Wahlder.[9]

The ALJ issued an unfavorable ruling on June 21, 2012.[10]  Mr. Plaisance requested review by the Appeals Council and submitted additional medical records

---

[4]      Rec. Doc. 5-1 at 118, 120.

[5]      Rec. Doc. 5-1 at 70, 77.

[6]      Rec. Doc. 5-1 at 45.

[7]      Rec. Doc. 5-1 at 84, 85.

[8]      Rec. Doc. 5-1 at 101.

[9]      A transcript of the hearing is found in the record at Rec. Doc. 5-1 at 55-68.

[10]     Rec. Doc. 5-1 at 43-51.

to the Appeals Council, but the Appeals Council denied his request.[11]  Therefore, the ALJ's ruling is the Commissioner's final decision.  In July 2013, Mr. Plaisance instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[12]  Mr. Plaisance now argues that the Commissioner erred in failing to find that he is disabled.

## ASSIGNMENT OF ERRORS

The undersigned interprets Mr. Plaisance's briefing as contending that the Commissioner erred by (1) failing to consider whether the side effects of his medication are disabling, (2) failing to properly evaluate his pain; (3) failing to find that his bipolar disorder is an impairment that meets a listing; and (4) failing to find that he has severe impairments in addition to hypertension.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[13]  If the Commissioner's

---

[11]     Rec. Doc. 5-1 at 5.

[12]     Rec. Doc. 1.

[13]     See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

findings are supported by substantial evidence, they must be affirmed.[14]  Substantial

evidence is more than a mere scintilla and less than a preponderance.[15]  A finding of

no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings support the decision.[16]  Finding substantial evidence requires

scrutiny of the entire record as a whole.[17]  In applying this standard, the court may not

re-weigh the evidence or substitute its judgment for that of the Commissioner.[18]

A claimant seeking Social Security benefits bears the burden of proving that

he is disabled.[19]  Disability is defined in the Social Security regulations as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

---

[14]   42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[15]   See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

[16]   *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[17]   *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[18]   *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

[19]   *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[20]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[21]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[22]

---

[20]    42 U.S.C. § 423(d)(1)(A).

[21]    20 C.F.R. § 404.1572.

[22]    See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[23] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[24]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[25]

The claimant bears the burden of proof on the first four steps.[26]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[27]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[28]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[23]      20 C.F.R. § 404.1520(a)(4).

[24]      20 C.F.R. § 404.1545(a)(1).

[25]      20 C.F.R. § 404.1520(e).

[26]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[27]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]      *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[29]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[30]

In this case, the Commissioner found, at step one, that Mr. Plaisance has not engaged in substantial gainful activity since April 21, 2009, the date on which he last worked at the substantial gainful activity level.[31]  That finding is supported by evidence in the record.

At step two, the ALJ found that Mr. Plaisance has the following severe impairment: hypertension.[32]  This finding is also supported by evidence in the record. The ALJ further found that Mr. Plaisance's hernia is not disabling because it was surgically repaired in December 2010.[33]  This finding is also supported by evidence in the record.   Mr. Plaisance does not dispute the findings concerning the hypertension or the hernia; however, the ALJ also found that Mr. Plaisance's mental impairments are not severe,[34] and Mr. Plaisance challenges that finding.

---

[29]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]    *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[31]    Rec. Doc. 5-1 at 45.

[32]    Rec. Doc. 5-1 at 45.

[33]    Rec. Doc. 5-1 at 47.

[34]    Rec. Doc. 5-1 at 47.

At step three, the ALJ found that Mr. Plaisance does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[35] Mr. Plaisance argues that this finding was incorrect, contending that his bipolar disorder with depressive syndrome is a severe impairment that meets the listing set forth in 20 C.F.R. 404, Subpart P, Appendix 1 § 12.04(3).

At the next step of the process, the ALJ found that Mr. Plaisance retains the residual functional capacity to perform the full range of light work.[36]  At step four, the ALJ found that Mr. Plaisance is unable to perform his last relevant work.[37]  At step five, the ALJ applied the Medical-Vocational Rules and found that Mr. Plaisance is not disabled regardless of whether he has any transferable job skills.[38]  The ALJ then concluded that Mr. Plaisance was not disabled from October 15, 2006 through the date of the decision.[39]  Mr. Plaisance disputes this finding.

---

[35]     Rec. Doc. 5-1 at 47.

[36]     Rec. Doc. 5-1 at 47.

[37]     Rec. Doc. 5-1 at 50.

[38]     Rec. Doc. 5-1 at 50.

[39]     Rec. Doc. 5-1 at 51.

<u>D<small>ISCUSSION</small></u>

**(1)   <u>D<small>ID THE</small> C<small>OMMISSIONER ERR IN FAILING TO FIND THAT THE SIDE EFFECTS</small> OF M<small>R.</small> P<small>LAISANCE'S MEDICATIONS ARE DISABLING</small>?</u>**

Mr. Plaisance's first assignment of error is that the ALJ failed to consider the side effects of his medications in evaluating his ability to work.  The Commissioner construed this argument as a challenge to the ALJ's credibility findings.  In support of his argument, Mr. Plaisance failed to identify any particular medication that has significant side effects or to identify the alleged side effects and how they affect him in the workplace.  Mr. Plaisance has the burden of proving that his is disabled, and he did not carry his burden of proof on this point.  This is particularly so because the record contains notations expressly stating that he was not experiencing adverse side effects from the medications prescribed for his mental disorder.[40]

There is no indication that the ALJ applied an incorrect legal standard in reaching his conclusion that Mr. Plaisance is not disabled due to the side effects of his medication, and there is substantial evidence in the record to support the ALJ's conclusion.  Accordingly, the ALJ did not err in failing to find that the side effects of Mr. Plaisance's medications are disabling.

---

[40]    Rec. Doc. Rec. Doc. 5-1 at 30, 5-3 at 104.

**(2)**   **DID THE COMMISSIONER ERR IN EVALUATING MR. PLAISANCE'S PAIN?**

Mr. Plaisance argues that the ALJ failed to properly evaluate his pain complaints.  The Commissioner considers this argument to be a challenge to the ALJ's findings regarding Mr. Plaisance's credibility.

Although Mr. Plaisance alleges that he continues to experience back pain and leg pain as a result of a workplace accident that occurred many years ago, there are no medical records contemporaneous with that alleged incident in the record.  Lumbar spine x-rays from LSU-University Medical Center in February 2009 do confirm small anterior bone spurs at L3-L4.[41]  At that time, Mr. Plaisance was working in a restaurant and complained of low back pain that had started three weeks earlier.[42]  He was diagnosed with a lumbar strain, given pain medication, and advised to use a heating pad, gentle stretching, and massage therapy to remedy this condition.[43]  Mr. Plaisance did not contend in his applications for benefits that his back pain is disabling, and the record contains no evidence that the residuary pain from the claimed workplace incident or from the lumbar strain in 2009 is so unremitting that it might properly be classified as disabling.

---

[41]      Rec. Doc. 5-1 at 410.

[42]      Rec. Doc. 5-1 at 411.

[43]      Rec. Doc. 5-1 at 413-14.

Pain can constitute a disabling impairment,[44] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[45]  Mild or moderate pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[46]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[47]  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[48]  The absence of objective factors can justify the conclusion that a witness lacks credibility.[49]

Mr. Plaisance did not claim, in his applications for Social Security benefits, that his back pain is a disabling impairment.  The evidence in the record does not

---

[44]      *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[45]      *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[46]      *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[47]      *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[48]      *Harper v. Sullivan*, 887 F.2d at 96.

[49]      *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

establish that Mr. Plaisance has a condition capable of producing disabling pain.  No evidence was presented indicating that Mr. Plaisance experiences pain that is so unremitting as to be disabling.

There is no indication that the ALJ applied an incorrect legal standard in reaching his conclusion that Mr. Plaisance is not disabled due to back pain, and there is substantial evidence in the record to support the ALJ's conclusion.  Accordingly, the ALJ did not err in evaluating Mr. Plaisance's pain complaints.

**(3)    DID THE COMMISSIONER ERR IN FAILING TO FIND THAT MR. PLAISANCE'S BIPOLAR DISORDER DOES NOT MEET A LISTING?**

Mr. Plaisance argues that his bipolar disorder is disabling because it satisfies a listing.  "The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months."[50]  With regard to affective disorders including bipolar disorders, "[t]he required level of severity . . . is met when the requirements in both [Paragraph] A and [Paragraph] B are satisfied, or when the

---

[50]    20 C.F.R. § 404 . Subpart P, Appendix 1, Section 12.00(A).

requirements in [Paragraph] C are satisfied."[51]  Paragraph A is satisfied with evidence demonstrating "[m]edically documented persistence, either continuous or intermittent," of "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)."  To satisfy Paragraph B, the manic and depressive syndromes must result "in at least two of the following:  1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."[52]  Alternatively, the criteria of Paragraph C must be satisfied, which include "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:   1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to

---

[51]     20 C.F.R. § 404 . Subpart P, Appendix 1, Section 12.04.

[52]     20 C.F.R. § 404 . Subpart P, Appendix 1, Section 12.04.

decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."[53]

There is evidence in the record that Mr. Plaisance has a bipolar disorder.  On November 11, 2008, he presented at the emergency room at University Medical Center in Lafayette, Louisiana, wanting to see a psychiatrist for his bipolar condition.[54]  This suggests that Mr. Plaisance had previously been diagnosed with such a condition or, at a minimum, believed that he was suffering with such a condition.  He was referred to the Tyler Mental Health Center for treatment of this condition.[55]  On numerous subsequent occasions when Mr. Plaisance sought treatment for unrelated medical conditions, he advised medical personnel that he was bipolar.[56]

In October 2010, Mr. Plaisance again sought a referral for treatment of his bipolar condition when he presented at the University Medical Center emergency room with unrelated complaints.[57]

---

[53]     20 C.F.R. § 404 . Subpart P, Appendix 1, Section 12.04(3).

[54]     Rec. Doc. 5-1 at 419.

[55]     Rec. Doc. 5-1 at 420.

[56]     See, e.g., Rec. Doc. 5-1 at 262, 411; Rec. Doc. 5-2 at 104, 113, 126, 137, 149.

[57]     Rec. Doc. 5-1 at 257.

On March 1, 2011, Mr. Plaisance was examined by psychologist Dr. Alfred E. Buxton, at the request of Disability Determination Services.[58]  He told Dr. Buxton that he had been a psychiatric inpatient at Vermilion Hospital "years ago" and had then been diagnosed with bipolar disorder.  He said he had been hospitalized there, and then had undergone approximately six months of outpatient treatment.  He also told Dr. Buxton that he had an appointment scheduled at a local mental health center for March 3, 2011.  When he saw Dr. Buxton, he was not taking any medications for his mental health issues.  Dr. Buxton concluded that Mr. Plaisance had Bipolar II Disorder, with mild to moderate impairment and a fair prognosis.  In his opinion, outpatient treatment and psychoactive medication would be appropriate.  He assigned a GAF score of 60 over the previous twelve months, indicating moderate symptoms,[59] and opined that Mr. Plaisance was capable of reentering the work force.

Just a few days later, on March 3, 2011, Mr. Plaisance sought treatment at the Dr. Joseph Henry Tyler, Jr. Mental Health Center.  The evaluation form from that initial visit indicates that he was trying to get back on medication for his mental disorder.[60]  At that time, he reported that he was not working, having lost his job as

---

[58]     Dr. Buxton's report is in the record at Rec. Doc. 5-1 at 354-358.

[59]     Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") at 32.

[60]     Rec. Doc. 5-1 at 105.

-15-

a dishwasher because he could not get along with a coworker, and having left his job as a laborer because he became upset.[61]  Mr. Plaisance was diagnosed with "BAD depressed with psychosis."[62]   BAD is an acronym meaning bipolar affective disorder.[63]  Medications were prescribed,[64] and Mr. Plaisance was treated at Tyler on eleven occasions between March 17, 2011 and November 21, 2011,[65] with psychiatrist Dr. George Diggs, licensed clinical social worker Michelle Maloney, and counselor Robert Landreneau.  The treatment notes show a steady improvement in his symptoms.  Initially, he was depressed, anxious, and reported visual and auditory hallucinations.  He also reported conflict with his brother, who lived with he and his mother and was also a patient at Tyler.  Over time, Mr. Plaisance's depression eased, his anxiety lessened, the hallucinations ceased, and he developed skills to avoid conflict with his brother.

Then, on December 5, 2011, Mr. Plaisance was seen in the emergency room at University Medical Center after having been gone from home for approximately three

---

[61]     Rec. Doc. 5-1 at 107.

[62]     Rec. Doc. 5-3 at 112.

[63]     Acronym   Finder,   http://www.acronymfinder.com/Bipolar-Affective-Disorder-(BAD).html (last visited Aug. 5, 2014).

[64]     Rec. Doc. 5-3 at 113.

[65]     Rec. Doc. 5-3 at 94-104.

days, "talk[ing] out of his head," and under the impression that he was pregnant.[66] After being medicated for this episode of decompensation, however, he was released to home.[67]

On February 22, 2012, Mr. Plaisance again visited the Tyler center, stating that he was satisfied with his medications and not complaining about depression or anxiety.[68] The treatment note from March 27, 2012 indicates that he is "doing well."[69] On May 9, 2012, however, he appeared tense, depressed, and confused, and reported conflict with his brother.[70]   On July 7, 2012, he told his social worker that his depression rated seven on a ten point scale while his anxiety was a five out of ten, but he denied hallucinations or angry outbursts.[71] On August 1, 2012, Dr. Diggs found Mr. Plaisance to be dysphoric and depressed with reports of good days and bad days.[72]   Dr. Diggs assigned a diagnosis code of 296.54, which means "bipolar I

---

[66]      Rec. Doc. 5-2 at 61, 85.

[67]      Rec. Doc. 5-2 at 66, 149.

[68]      Rec. Doc. 5-1 at 35.

[69]      Rec. Doc. 5-1 at 34.

[70]      Rec. Doc. 5-1 at 33.

[71]      Rec. Doc. 5-1 at 32.

[72]      Rec. Doc. 5-1 at 30.

disorder, most recent episode depressed, severe with psychotic features."[73]   He

assigned a GAF score of 53, indicating moderate symptoms, such as flat affect and

circumstantial speech or occasional panic attacks or moderate difficulty in social,

occupational, or school functioning.[74]   On September 26, 2012, Mr. Plaisance

reported that he "is doing OK but generally is depressed" but getting along better with

his brother.[75]   Dr. Diggs found him "minimally improved," used the same diagnosis

code, and again assigned a GAF score of 53,[76] indicating moderate symptoms.

It does not appear that the treatment records from the Tyler center were

available for review by the ALJ, but they were added to the records before the

Appeals Council made its decision.   Those records certainly were not available to Dr.

Buxton when he evaluated Mr. Plaisance's mental status and ability to work.   The

ALJ did have Dr. Buxton's report, and he referred to it at the hearing and again in his

decision.   In fact, in referring to Dr. Buxton's opinions at the hearing, the ALJ

mischaracterized them, addressing Mr. Plaisance as follows:   "Let me tell you, Dr.

Buxton, who is a well-known psychologist, finds there's absolutely nothing wrong

---

[73]      Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV")
at 807.

[74]      Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV")
at 32.

[75]      Rec. Doc. 5-1 at 24.

[76]      Rec. Doc. 5-1 at 29.

with you if you read that report. . . .  So I'm going to listen to what you say but the consultative exam report, Dr. Alfred Buxton says you're perfectly okay."  In fact, however, Dr. Buxton did not find that Mr. Plaisance was "perfectly okay."  To the contrary, he found that Mr. Plaisance suffered from Bipolar II Disorder as well as other disorders, and he recommended that Mr. Plaisance seek outpatient mental health intervention as well as psychoactive medication and counseling.

Regardless of the ALJ's ill-advised comments at the hearing, however, the evidence contained in the record does not establish that Mr. Plaisance's symptoms are sufficiently severe to satisfy both Paragraphs A and B of the listing or, alternatively, to satisfy Paragraph C of the listing.  Accordingly, the undersigned finds that the Commissioner did not err in failing to find that Mr. Plaisance's bipolar disorder meets a listing.  However, the undersigned does find that the Commissioner erred in failing to find that Mr. Plaisance's bipolar disorder is a severe impairment.  The evidence in the record clearly shows that Mr. Plaisance consistently treated at the Tyler center from March 2011 through September 2012, a period of more than twelve months, during which he received counseling and medication for his condition and did not work.  Because of the ALJ's error, this matter will be remanded for further consideration of the effect that this impairment has on Mr. Plaisance's ability to work.

**(4)** **Did the Commissioner Err in Failing to Find that Mr. Plaisance has Severe Impairments other than Hypertension?**

The ALJ found that Mr. Plaisance's only severe impairment is hypertension. In his applications for benefits, Mr. Plaisance also claimed that he had a hernia that was disabling, and he claimed that his mental impairment is disabling. In this appeal, Mr. Plaisance claims that the ALJ erred in failing to find that those impairments are severe.

The record confirms that Mr. Plaisance was diagnosed with an umbilical hernia that was surgically repaired on December 20, 2010.[77] On January 11, 2011, he returned to University Medical Center for a post-operative evaluation and was doing well with no complaints.[78] A condition that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability.[79] Therefore, Mr. Plaisance's hernia can no longer form a basis for his claimed disability, and the ALJ's finding in that regard was not errorneous.

Mr. Plaisance also argues that his chronic affective disorder, also referred to in the record as a bipolar disorder, is a severe condition that was overlooked by the ALJ. "[A]n impairment can be considered as not severe only if it is a slight

---

[77]     Rec. Doc. 5-1 at 230-232, 235.

[78]     Rec. Doc. 5-1 at 230.

[79]     *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[80]   In the preceding section of this report, the undersigned detailed the treatment that Mr. Plaisance received between March 2011 and September 2012 for his bipolar disorder as well as the evaluations by his treating psychiatrist Dr. Diggs and the consultative psychologist Dr. Buxton, all of which indicates that Mr. Plaisance's bipolar disorder has more than a minimal effect on his functioning.  Accordingly, the undersigned finds that the ALJ's conclusion that Mr. Plaisance's mental impairments are not severe was not supported by substantial evidence in the record and, for that reason, was reached in error.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mr. Plaisance is not disabled is not supported by substantial evidence and was not  reached by the application of the proper legal standards.   Treatment notes and other medical records were added to the administrative record of this proceeding after the ALJ issued his ruling denying Social Security benefits to the claimant (Rec. Doc. 5-1 at 9), but the Appeals Council

---

[80]     *Bayer v. Colvin*, 557 F. App'x 280, 287 (5th Cir. 2014), citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

declined to review those records or the ALJ's ruling (Rec. Doc. 5-1 at 5).  This resulted in an erroneous finding that Mr. Plaisance's mental impairment is not severe and precluded an evaluation of whether this severe impairment medically equals a listing, either on its own or in combination with Mr. Plaisance's other severe impairment, hypertension.   This also resulted in a residual functional capacity evaluation that failed to consider the effects of Mr. Plaisance's mental impairment on his ability to work.   Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be **REVERSED AND REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).  More particularly, the undersigned recommends that the remand include, without limitation, sending the case to the hearing level with instructions to the Administrative Law Judge to (1) obtain updated records from the medical professionals treating Mr. Plaisance's bipolar disorder, (2) order either an updated consultative examination of claimant or an evaluation by claimant's treating physician with regard to Mr. Plaisance's residual functional capacity in light of his mental impairment, (3) determine whether Mr. Plaisance's severe impairments – hypertension and bipolar disorder – meet or medically equal a listing, either singly or in combination, and (4) determine whether Mr. Plaisance retains the residual functional capacity to perform any type of work..

It is further recommended that the claimant be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 12th day of August 2014.

COPY SENT:

DATE: _8/12/2014_

BY: ____EFA____

TO: ____RFD____

cg

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-23-